## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

S.B., by her next friend Tomika Johnson,

      Plaintiff,                    Case No.

v.                                  Hon.

ANN ARBOR PUBLIC SCHOOLS,

      Defendant.

---

**NICHOLAS ROUMEL (P37056)**
**EDWARD MACEY (P72939)**
**NACHT, ROUMEL, SALVATORE,**
**BLANCHARD & WALKER, P.C.**
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

    Plaintiff states her complaint as follows:

*Parties/Jurisdiction/Venue*

    1.    Plaintiff Sha'kyra (hereafter "S.B." or "Sha'kyra," who requests anonymity in this lawsuit due to her status as a victim of sexual assault) is a resident of Ann Arbor, Washtenaw County, Michigan.

    2.    Defendants Ann Arbor Public Schools (AAPS) is a Michigan public school district pursuant to the School Code of 1976, MCL 380.1 et seq., with principal offices in Ann Arbor, Michigan.

3.     The events that are the basis for this lawsuit took place in Ann Arbor, Michigan, while Sha'kyra was a student at defendant's school district, identified by student ID #302852, D.O.B. 5/31/03.

4.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343 (a)(3), 1343(a)(4), 2201 and 2202; 42 U.S.C. §12101 et seq. ["ADA"], Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. §794(a)], the Michigan Persons with Disability Civil Rights Act [MCL §37.1101, et seq.; MPWDCRA], and 42 United States Code ["USC"] section 1983.

5.     The amount in controversy exceeds $75,000.00.

6.     Exhaustion of administrative remedies is not required and/or futile under the unique circumstances of this case. Sha'kyra's injuries cannot be redressed by resort to administrative due process procedures available for her special education status, and she seeks only monetary damages to compensate her for the assault causing her injuries.

*Factual Allegations*

7.     Previous paragraphs adopted by reference.

8.     Sha'kyra was born on May 31, 2003.  During the 2010-2011 school year, she attended Eberwhite Elementary School where she was enrolled in second grade.  It was her first year at Eberwhite, as she had previously attended Buns Park Elementary.

9.     Sha'kyra spent the end of her days in a special education class, and her teacher was Ms. Valensky.  She was eligible for special education services based on her speech and language impairment.  She was eligible to be in a general education classroom for 40% to 79% of the day (where her teacher was Ms. Brieloff).  She used special education services at the end of the day to help her develop math and reading skills.

10.     Around September and October of 2010, Sha'kyra was continually bullied by her male classmates "Adrian" and "Kevon" who were also in the special education class. They would hit her and call her names such as "bitch" and "ho." She would complain to her mother, who would in turn complain to the teacher, Ms. Valensky. Valensky did not do anything proactive and accused Sha'kyra of teasing and provoking the boys.

11.     At one point, in October, Kevon punched Sha'kyra in the rear end. She came home walking with a limp because of it. Ms. Johnson complained to the teacher. The principal, Ms. Debi Wagner, talked to Kevon and Sha'kyra separately. She called Kevon's mother. Kevon was not punished for the incident. Wagner told Sha'kyra to come directly to her if she had any further problems with him.

12.     Sha'kyra did have further problems with the boys. Whenever she did so, she told her mother, and sometimes told the principal as well. Additionally, Sha'kyra's mother Ms. Johnson would also report what her daughter told her about the bullying to the teacher and sometimes to the principal as well.

13.     Sometime in November, Kevon threw dirt in Sha'kyra's hair. During that same time frame, Adrian would cuss her out and said if she told on him, he'd hurt her.

14.     Ms. Johnson told the principal at this time, Judy Copes (who was an interim principal temporarily replacing Ms. Wagner, who was on leave). Copes suggested a meeting with Kevon's mother, the teacher, and the principal. However, Ms. Copes told Ms. Johnson that Kevon's mother refused to meet, and that she (Ms. Copes) could not force her to meet.

15.     On March 22, 2011, Sha'kyra was sexually assaulted in the bathroom of her self-contained special education classroom even though there were four adults assigned to the classroom. Somehow Adrian had gotten himself into the bathroom with her. He pulled Sha'kyra

off the toilet and tried to pull her shirt off. He kissed her, according to Sha'kyra, "ten times" and also pulled his own pants down and exposed himself. Adrian then took Sha'kyra's hand and put it down his underwear so that it touched his penis.  He then kissed her vagina and made Sha'kyra put her mouth on his penis.

16.     During this assault, Ms. Valensky was out of the class.  The class had a substitute teacher, Kristin Schroeder, who was a new substitute.  The two teacher assistants, Nancy Nelson and Jen Nunez were at school but were allegedly out of the room when the incident occurred. The student teacher, Brittany Hamilton-Reed, was there.

17.     At some point during the assault, Ms. Hamilton-Reed realized the students were missing and called their names. After they did not emerge for a while, she went over and told them to come out.  Adrian pulled his pants back up. Sha'kyra was still on the toilet. Adrian came out first and was fastening his belt.  Sha'kyra came out pulling up her pants.  Ms. Hamilton-Reed took them to the office and Sha'kyra started to cry.

18.     Ms. Valensky was called from a meeting and interviewed the children. Sha'kyra told Ms. Valensky what had happened, and Valensky promised she'd call Sha'kyra's mother.

19.     Ms. Valensky, however, did not call Ms. Johnson but instead called the principal, Ms. Copes. She left a message on her cell phone only generally saying that there was an incident. She did not name names. Copes was in meetings and otherwise had her phone turned off and did not pick up the message until the next day.

20.     On March 23, 2011, Copes followed up on the incident and learned who was involved. She called Ms. Johnson and said "It's urgent that I talk with you. Don't be upset, but something bad has happened."

21.     Ms. Johnson came in and spoke to Valensky and Copes, and learned that her daughter had been sexually assaulted the day before.

22.     Copes told Ms. Johnson that she would suspend Adrian, but for only two days because of his status as a special education student.

23.     Copes also suggested placement in a different classroom than the two boys, but urged Ms. Johnson "Don't call the police" and recommended she take Sha'kyra to the doctor (even though it was now the day after the assault). She apologized to Ms. Johnson for her not being called the day before, and offered to have Ms. Johnson speak with the school social worker.

24.     Ms. Johnson refused to authorize the school social worker to speak with her about her daughter. She took Sha'kyra to the UM hospital.

25.     At the hospital, the hospital personnel reported the incident to the police. They interviewed Sha'kyra, and at that time, Ms. Johnson learned to her great shock that her daughter had also been sexually assaulted by Adrian the previous October, in the same bathroom.

26.     Specifically, Sha'kyra alleged that in late October, 2010, Adrian and Kevon took Sha'kyra and another girl (Aysha) into the bathroom, where Adrian put his penis in Sha'kyra's mouth. She screamed. During this assault, Kevon was taking the clothes off Aysha. Sha'kyra stated to police that this occurred just before the Halloween party, when the girls were putting on costumes in the classroom bathroom.

27.     As it happened, during the first assault in October, 2010, Ms. Johnson coincidentally had arrived shortly afterwards, bringing her daughter's costume and cookies for the class (she was late bringing the costume so Sha'kyra had been putting on one supplied by the school during the assault).

28.     During the October assault, Ms. Valensky had noticed there were boys in the bathroom and told them to get out. She did not inquire about what had happened in the bathroom even though the two boys and two girls came out together.

29.     After Ms. Johnson first learned about the October, 2010 assault in March, 2011, she asked Ms. Valensky why she had not been told sooner. Ms. Valensky refused to answer.

30.     Upon Sha'kyra's return to school after the second assault in March, she continued having trouble with Kevon. Kevon kicked Sha'kyra and was going around telling other students that Sha'kyra and Adrian had been "humping" in the bathroom the day before.

31.     Eberwhite staff interviewed Kevon and Adrian, and learned that Adrian was blaming Kevon for "making" him assault Sha'kyra, and that Kevon admitted to that he told Adrian and Sha'kyra to go into the bathroom together. Kevon also claimed to have gone into the bathroom and witnessed Adrian sitting on Sha'kyra's lap with Sha'kyra's top off.

32.     As a result of these interviews, upon information and belief, Adrian and Kevon were suspended, but for only two days each, although Adrian was also subjected to delinquency proceedings for criminal sexual conduct – first degree and second degree (person under 13).

33.     At Sha'kyra's Special Education Individual Education Plan (IEP) meeting on March 28, 2011, Ms. Johnson sought a transfer and appropriate educational program at Burns Park Elementary School, which was Sha'kyra's home school (in her attendance area). However, this was opposed by AAPS.

34.     Ms. Johnson contacted the Student Advocacy Center which intervened and filed for a due process hearing to appeal the recommendation of the IEP team. The district repeatedly refused to transfer Sha'kyra to Burns Park. Finally, after two mediation sessions, they agreed to the transfer.

35.     Sha'kyra was out of school for five weeks during the IEP process with no adequate compensatory education.

36.     To this day Sha'kyra requires therapy due to the sexual assaults and the school district's inadequate protection of her.

### Legal Allegations

*Count I – Americans with Disabilities Act (ADA) – Discrimination*

37.     Previous paragraphs adopted by reference.

38.     Defendant AAPS is a public entity within the meaning of 42 USC 12131(1).

39.     Sha'kyra's various conditions qualify her as a person with as an actual disability for purposes of ADA in that these conditions substantially limit one or more major life activities. 42 USC 12102 (2). These conditions include, but are not limited to, significant speech and language impairments, in both express and receptive communication, and other learning disabilities.

40.     Sha'kyra is a qualified individual. As a special education student receiving services, Sha'kyra meets the essential eligibility requirements for participation in the programs or activities provided by defendants. Sha'kyra meets these requirements with or without reasonable modifications to the rules, policies, or practices of Defendant.  42 USC 12131 (2).

41.     Despite the fact that she is a qualified individual, Sha'kyra has been denied, by reason of her disability, the benefits of, or participation in, the services provided, by having been bullied throughout the 2010-2011 school year, including having endured two sexual assaults, and having been inadequately protected from same by AAPS.

42.     Defendant AAPS' actions in failing to adequately protect Sha'kyra's constituted discrimination in violation of the ADA,  42 USC 12132, in that Sha'kyra was, by reason of her

disability, excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

43.      Defendant AAPS' discrimination has directly and proximately caused Sha'kyra great damages, as set forth herein and below.

*Count II –Persons with Disability Civil Rights Act - PDCRA – Discrimination*

44.      Previous paragraphs adopted by reference.

45.      Sha'kyra's various conditions qualify her as a person with as an actual disability for purposes of the Michigan Persons With Disability Civil Rights Act (PDCRA).    MCL 37.1103.

46.      The Defendant AAPS meets the definition of an "educational institution" under MCL 37.1401.

47.      The MPWDCRA states that an educational institution may not "Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids."

48.      Defendant AAPS discriminated against Sha'kyra because of their failure to protect her from bullying and two sexual assaults, which significantly interfered with her ability to fully utilize the Defendant's educational services.

49.      Defendant AAPS's discrimination has directly and proximately caused Sha'kyra great damages as described herein and below.

*Count III – Section 504 of the Rehabilitative Act – Discrimination*

50.     Previous paragraphs adopted by reference.

51.     Sha'kyra is a qualified person with a disability for purposes of Section 504 of the Rehabilitative Act of 1973 (Section 504) in that these conditions substantially limit one or more major life activities. 34 CFR 104.3(j) (1) (i).

52.     Defendant AAPS offers programs or activities, in which Sha'kyra participated, that were receiving federal financial assistance.

53.     Accordingly, AAPS is subject to Section 504's requirements that qualified persons not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

54.     Defendant AAPS discriminated against Sha'kyra because of their failure to protect her from bullying and two sexual assaults, which significantly interfered with her ability to fully utilize the Defendant's educational services.

55.     Such discrimination operated to exclude Sha'kyra from the participation in, and to deny her the benefits of, the programs or activities offered by AAPS.

56.     Sha'kyra suffered damages, as described herein and below, as a result of AAPS' discrimination that cannot be addressed by any amount of compensatory education.

*Count IV – 42 USC § 1983 special danger theory*

57.     Previous paragraphs adopted by reference.

58.     Plaintiff had a constitutional right to liberty, including the right to personal security and bodily integrity and the right to be free from fear, harm and sexual assault in her school.

59.     There was an affirmative act and/or conscious omission by the Defendant which either created or increased the risk that Sha'kyra would be exposed to an act of violence by a third party.

60.     There was a special danger to Sha'kyra wherein the Defendant's actions placed her specifically at risk, as distinguished from a risk that affects the public at large.

61.     The Defendant knew or should have known, based on the prior bullying complaint and the prior sexual assault, that its actions specifically endangered the Plaintiff.

62.     Defendant's actions in creating a special danger to the Plaintiff damaged her as alleged herein and below.

63.     Defendant AAPS' actions in creating this danger to Plaintiff resulted from a policy or custom of failing to enforce and/or protect against bullying and/or sexual assaults in the Eberwhite Elementary School Special Education program.

64.     At all times relevant, Defendant was acting under color of law.

65.     Defendant is accordingly liable to Sha'kyra under 42 USC § 1983, a "government created danger" theory, for violation of Sha'kyra's 14th Amendment right to liberty as described herein.

66.     Defendant is not immune from liability under this theory and/or Defendant was grossly negligent, or deliberately indifferent to the rights of the Plaintiff.

*Count V – 42 USC § 1983 sex harassment/equal protection*

67.     Previous paragraphs adopted by reference.

68.     Plaintiff had a constitutional right to equal protection of law, and to be free from harassment based on her sex, including sexual assault.

69.     Defendant's actions and omissions, including but not limited to their inadequate response to Plaintiff's complaints about bullying and the first incident of sexual assault against her, acted to deprive Plaintiff of these constitutional rights.

70.     Defendant's actions and omissions in depriving Plaintiff of her constitutional rights damaged her as alleged herein and below.

71.     Defendant AAPS' actions and omissions, resulting in the deprivation of Plaintiff's constitutional rights, resulted from a policy or custom of failing to enforce and/or protect against bullying and/or sexual assaults in the Eberwhite Elementary School Special Education program.

72.     Defendant is accordingly liable to Sha'kyra under 42 USC § 1983, for violation of Sha'kyra's 14th Amendment right to equal protection of law as described herein.

73.     Defendant is not immune from liability under this theory and/or Defendants were grossly negligent, or deliberately indifferent to the rights of the Plaintiff..

*Count VI – Title IX – gender discrimination*

74.     Previous paragraphs adopted by reference.

75.     Defendant AAPS was the recipient of federal funds and was therefore subject to the proscription of "Title IX," Title IX of Education Amendments of 1972 (20 U.S.C.S. § 1681 et seq.).

76.     The name calling, bullying, sexual assaults, and other harassment inflicted upon Sha'kyra by Adrian and Kevon was based upon her gender (female).

77.     The harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the Plaintiff of access to the educational opportunities or benefits provided by the AAPS.

78.     Defendant AAPS had actual knowledge of the harassment.

79.     Defendant AAPS was deliberately indifferent to the harassment suffered by the Plaintiff.

### Damages

80.     Previous paragraphs adopted by reference.

81.     As a proximate cause and/or a consequence of defendants' conduct and actions, plaintiff suffered actual and/or consequential damages as follows: emotional distress and/or loss of hedonic value of life, public humiliation, embarrassment and outrage, mental anguish, anxiety and mortification, depression, and physical manifestations including fear of going to the bathroom by herself, and anxiety about sleeping on her own. Sha'kyra continues to be in therapy.

82.     Defendants' actions were at a minimum grossly negligent, and were made with reckless disregard to plaintiff's legal and civil rights and warrant imposition of the greatest possible combination of punitive, emotional distress and exemplary damages, as allowed by law.

### Jury Demand

83.     Plaintiff demands a jury trial.

### Relief Requested

Plaintiff requests this honorable court grant her the following relief:

a.      a minimum of $75,000 damages, to a maximum as warranted by the proofs;

b.      costs, pre- and post-judgment interest and attorney fees;

c.      any other relief as is just and allowed by law, including but not limited to equitable, injunctive and declaratory relief permitted under law.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.


Nicholas Roumel (P37056)
Attorney for Plaintiff
101 North Main Street, Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
*nroumel@nachtlaw.com*

Dated: February 1, 2012

## VERIFICATION OF PLAINTIFF

I swear under penalty of perjury that the information in this complaint is true to the best of my knowledge, information, and belief.

February 1, 2012

Tomika Johnson